NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOIS E. GRECO, | Civil Action No.: 16-7829 (CCC) |
| Plaintiff, | |
| v. | OPINION |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

Before the Court is Plaintiff Lois E. Greco's appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is vacated and remanded for further proceedings.

### A. Procedural Background

Plaintiff applied for disability insurance benefits on August 1, 2012, alleging disability as of May 30, 2010. (Tr.[1] at 21). The application was denied initially on February 12, 2013 and upon reconsideration in September 2013. (*Id.*). On March 27, 2015, a hearing was held before ALJ John Giannopoulos. (*Id.*). ALJ Giannopoulos issued a decision on May 11, 2015 finding Plaintiff was still capable of performing past relevant work despite her severe impairments and was

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 13).

1

therefore not disabled, as defined by the SSA. (*Id.* at 23-30). Plaintiff requested review of the decision and the Appeals Council denied the request on August 31, 2016. (*Id.* at 1-3). This appeal followed. (ECF No. 1).

### B. Factual Background

Plaintiff is currently 67 years old and has a high school education. (Tr. at 190, 206). Plaintiff is certified as a medical assistant and worked as a medical assistant from 1970 until 2010. (*Id.* at 96, 206). After the alleged disability onset date, Plaintiff stopped working full time but began working part time in July 2014. (*Id.* at 23).

Plaintiff alleges that herniated discs in her cervical and lumbar spine, prior surgeries, depression, anxiety and panic disorder limit her ability to work. (*Id.*). In February 2006, Plaintiff was diagnosed with a disc herniation at the L3-4 level and subsequently underwent a lumbar discectomy at L3-4, performed by Dr. Partick Roth. (*Id.* at 359-60, 387-88). According to her treating physician Dr. Keshishian, Plaintiff continued to suffer from severe back pain after the surgery. (*Id.* at 340-41). Plaintiff underwent a left discectomy at the L4-5 level on June 25, 2009, again performed by Dr. Roth. (*Id.* at 389-92). In November 2010, Plaintiff was complaining of right knee pain and underwent an MRI of her cervical spine. (*Id.* at 284-85). The MRI showed solid fusions from previous surgery, small focus areas of myelomalacia, disc herniation, mild impingement, and moderate to severe foraminal stenosis. (*Id.* at 290, 293). A state health examiner, Justin Fernando, M.D., conducted a consultative evaluation of Plaintiff in July 2011. Dr. Fernando found that Plaintiff had full range of motion of the upper extremity joints, hips, knees, and ankles, full extension of the lumbar spine, but some restricted range of motion of the cervical spine. (*Id.* at 273). Dr. Fernando also noted that Plaintiff's subjective claims of weakness were unsupported by his examination results. (*Id.*).

In January 2013, Plaintiff underwent an updated consultative examination with Dr. Fernando after Plaintiff complained that she had severe pain in her back and neck. (*Id.* at 434-35). Dr. Fernando diagnosed Plaintiff with chronic cervical pain, noted Plaintiff's history of disc herniation in the cervical spine, and also stated that there was no present indication of any residual impingement of the nerve roots in the lumbar spine. (*Id.* at 436). On June 15, 2013, Plaintiff underwent an additional MRI of her lumbar spine that showed multi-level degenerative disc disease but that the vertebral body heights were well maintained. (*Id.* at 509-10). Dr. Keshishian, Plaintiff's treating physician from 2001 to 2015, evaluated Plaintiff's impairments and concluded that Plaintiff has "a poor prognosis for full time employment." (*Id.* at 528).

In addition to Plaintiff's cervical and lumbar spine issues, Plaintiff began experiencing abdominal pain in March 2013. Plaintiff had a stent graft repair of an abdominal aortic aneurysm found in Plaintiff's abdomen and pelvis in June 2013. (*Id.* at 441-42, 489-99). A CT angiogram in September 2014 showed that there was no leakage and that the aneurysm sac had significantly decreased in size. (*Id.* at 517). Plaintiff also had knee surgery after suffering a torn meniscus around the same time. (*Id.* at 528).

At the hearing, Plaintiff testified as to her daily activities as well as her pain and symptoms. Plaintiff stated that she has weakness in her hands from her degenerative disc disease of the cervical spine and pain in her legs. (*Id.* at 50, 54). Regarding her ability to function, Plaintiff alleged that she has difficultly sitting in a regular chair, standing still, and walking. (*Id.* at 55-56, 62-62). She cannot lift her eight-month old grandson. (*Id.* at 66). She further testified that she can walk about a block to a block and a half without pain or weakness, can grocery shop for small items on her own, and can surface clean but is unable to vacuum. (*Id.* at 64, 66, 68).

### C. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### D. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).

The SSA follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. *Id.* Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden

of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## II. DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found Plaintiff met the insured status requirements of the SSA and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (Tr. at 23). At steps two and three, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine with a history of surgical intervention; status post torn meniscus repair of the right knee; and a history of an aortic aneurysm. (*Id.*). The ALJ also concluded that Plaintiff's diverticulitis and depression were not severe impairments. (*Id.* at 24). Based on these findings, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets, either individually or in combination, any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 25-26). Next, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), with the exception that Plaintiff can occasionally use her feet for foot controls, frequently reach overhead and in all directions but can never climb ladders, ropes, or scaffolds, can never crawl or squat, and cannot have exposure to unprotected heights, dust, odors, fumes, or pulmonary irritants. (*Id.* at 26).

To reach this conclusion, the ALJ considered Plaintiff's history of degenerative disc disease of the cervical and lumbar spine, for which she had prior surgeries and multiple MRI scans. (*Id.* at 27). The ALJ discussed the opinions of multiple doctors from 2009 through 2015, including Plaintiff's treating physicians, Dr. Jay Kaiser, Dr. Justin Fernando, Dr. David Panush, and Dr. Paul Keshishian and state agency consultative examiners, Dr. Joseph Udomasaph, Dr. Howard Goldbas,

and Dr. Abraham Kuperberg. (*Id.* at 27-29). Regarding Plaintiff's other severe impairments, the ALJ considered Plaintiff's history of aortic aneurysm, for which she underwent an aortic aneurysm repair in 2013. (*Id.* at 27). Moreover, the ALJ discussed Plaintiff's right knee torn meniscus, for which she had a prior surgery. (*Id.*). The ALJ also heard additional testimony about Plaintiff's impairments from Plaintiff's friend of over twenty years, Joe Baniene.

The ALJ concluded that, overall, the medical records concerning Plaintiff's physical impairments do not show evidence of a disabling condition and that Plaintiff retains some function consistent with at least light work. (*Id.*). The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms are not entirely credible because Plaintiff "described daily activities which are not limited to the extent one would expect" under the circumstances. (*Id.* at 29). The ALJ gave great weight to the opinions of Dr. Udomasaph and Dr. Kuperberg because both opinions "are generally consistent with the record as a whole." (*Id.* at 28). However, the ALJ accorded limited weight to Dr. Goldbas's opinion that Plaintiff is limited to performing sedentary work, finding that this opinion was "generally inconsistent with the record as a whole." (*Id.*). The ALJ also gave no weight to the opinion of Plaintiff's treating physician, Dr. Keshishian, because of vagueness and potential bias due to the fact that Dr. Keshishian was Plaintiff's employer at one time. (*Id.*).

At step four, the ALJ found Plaintiff capable of performing past relevant work as a Medical Assistant, which is considered light, skilled work. (*Id.* at 30). The ALJ considered testimony from a vocational expert ("VE") who compared the requirements of a Medical Assistant to the Plaintiff's capabilities. (*Id.*). The VE opined that an individual with Plaintiff's RFC could perform this job as actually and generally performed. (*Id.*). After reviewing the evidence and comparing Plaintiff's RFC and the requirements of a Medical Assistant, the ALJ found that Plaintiff could perform her

past relevant work. (*Id.*). Therefore, the ALJ concluded that Plaintiff is not disabled as defined in the SSA. (*Id.*).

B.  **Analysis**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ's reasons for not crediting the opinion of Dr. Goldbas are not supported by the record, (2) Plaintiff is entitled to benefits even if she could perform sedentary or light work, and (3) the ALJ improperly evaluated Plaintiff's complaints. (ECF No. 21 at 16-21).

First, the Court addresses whether the ALJ's decision to not fully credit the opinion of Dr. Goldbas, a state medical examiner, is supported by the record. "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In this case, the ALJ concluded that Dr. Goldbas's finding that Plaintiff is restricted to sedentary work was "generally not consistent with the record as a whole" and, consequently, accorded Dr. Goldbas's opinion limited weight. (Tr. at 29). The ALJ found that Plaintiff's ability "to walk her dog in the park, shop, cook, and clean are activities that extend beyond the sedentary exertional level." (*Id.*).

The Court finds that the ALJ's decision to discount Dr. Goldbas's opinion was not supported by substantial evidence because the ALJ failed to conduct a full examination of the record, including Plaintiff's extensive testimony about her limitations and related record evidence. At the hearing, Plaintiff gave detailed descriptions of how she performs daily activities and chores. In response to the ALJ's questioning, Plaintiff testified that she could not walk for more than a block and a half without pain and weakness. (Tr. at 64). When asked about shopping, Plaintiff testified that she usually "stop[s] daily to get small amounts" of groceries that she can handle on her own and she has to lean on a cart as she shops. (*Id.* at 66, 69). She testified that she relies on

8

her daughter to do any bulk food shopping or any other chores that require heavy lifting. (*Id.* at 70-71). Plaintiff's daughter's statements corroborated this testimony. (*Id.* at 213-220). Regarding other household chores, Plaintiff stated that her cooking consists mostly of microwaving and that she cannot make dinner from scratch due to her impairments. (*Id.* at 72). Plaintiff also testified that she can only surface clean her one-bedroom apartment and cannot vacuum. (*Id.* at 68).

The ALJ failed to consider Plaintiff's limitations when performing these tasks before concluding that these activities were inconsistent with sedentary work. The ALJ's reason for discrediting Dr. Goldbas's opinion was that the opinion was contradicted by Plaintiff's ability to perform certain tasks. (*Id.* at 29). However, the ALJ did not mention Plaintiff's testimony regarding how she performs these activities in his finding. Instead, the ALJ only cited to the report of Dr. Kuperburg, a state agency psychological examiner, as evidence of Plaintiff's abilities. (*Id.*). Dr. Kuperburg's report focused on Plaintiff's mental health and has no information regarding how far Plaintiff can walk without pain or how Plaintiff shops, cooks, and cleans. (*Id.* at 500-04). Plaintiff's testimony at the hearing contained this information. Yet, the ALJ did not take Plaintiff's testimony into consideration in reaching his decision about Dr. Goldbas's testimony. Therefore, the Court finds that the ALJ's decision to give Dr. Goldbas's testimony limited weight was not supported by substantial evidence.

The Commissioner contends that Plaintiff attempts to bolster her argument by relying on subjective allegations and that these subjective allegations alone cannot establish disability. (ECF No. 23 at 13). However, Dr. Goldbas reviewed pertinent, objective medical evidence before concluding that Plaintiff is limited to sedentary work. (*Id.* at 122-23). According to the report, Dr. Goldbas had the opportunity to analyze medical records of Plaintiff's history of disc herniation

and aortic aneurysm, CT scans, exercise stress tests, and physical therapy records, in addition to Plaintiff's account of her symptoms. (*Id.*).

The Court declines to guess how the ALJ would have decided this matter if the ALJ accorded different weight to Dr. Goldbas's finding that Plaintiff is limited to sedentary work. In his report, Dr. Goldbas stated that Plaintiff was capable of performing her past relevant work as she actually performed it. (*Id.* at 128). Nonetheless, Dr. Goldbas also opined in the same report that Plaintiff "demonstrates the maximum sustained work capability" for sedentary work based on his analysis of the seven strength factors. (*Id.*). As discussed above, the Court finds that the ALJ's decision to discount Dr. Goldbas's conclusion that Plaintiff was limited to sedentary work was not supported by substantial evidence. Hence, this matter must be remanded for further proceedings based on the Court's finding. Because this matter is being remanded, the Court need not address Plaintiff's arguments regarding additional purported errors.

### III. CONCLUSION

For the foregoing reasons, the Court vacates the ALJ's decision and remands this case for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: December 20, 2018

_____
**CLAIRE C. CECCHI, U.S.D.J.**